(167 App. Div. 349)

FAIRWEATHER v. SUTPHEN et al.   (No. 7192.)

(Supreme Court, Appellate Division, First Department. · May 7, 1915.)

1. MASTER AND SERVANT ☞101, 102—INJURIES TO SERVANT—DUTY OF MASTER.

An employer is bound to take all reasonable precautions for the safety of an employé engaged in work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ☞101, 102.]

2. MASTER AND SERVANT ☞278—PERSONAL INJURIES TO SERVANT—NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.

In an action for death of an employé, evidence held insufficient to show that the killing of deceased in an elevator shaft was caused by defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

Appeal from Trial Term, New York County.

Action by Edna E. Fairweather against John L. Sutphen and another. Judgment for plaintiff, and defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Edwin A. Jones, of New York City, for appellants.
Michael J. Joyce, of New York City, for respondent.

McLAUGHLIN, J. Action to recover damages for the death of plaintiff's intestate, alleged to have been caused by negligence of the defendant. In May, 1911, the Tide Water Building Company, as general contractor, was engaged in the erection of a building in the city of New York. It sublet to the defendants a portion of the work, which included the setting of the glass. In the building there were four elevators, two of which ran to the tenth and the other two to the eighteenth floor. On the day of the accident only one of the elevators running to the eighteenth floor was being used; the other having certain repairs made upon it. The shafts in which these elevators ran were referred to on the trial, and are so designated in the record, as the "live" shaft and "dead" shaft, respectively, and had the usual sliding doors at each floor. The doors were about 2 feet 6 inches wide; the lower half being solid, and the upper half consisting of six panes of transparent glass. In setting the glass, some of the putty was forced to the inside of the shaft, and the deceased was, immediately prior to the accident, engaged in removing it. In doing the work the door of the shaft had to be opened sufficiently to allow the workman to extend his arm and part of his body into the shaft. Oliver, who operated the elevator in the "live" shaft, testified that about 3 o'clock in the afternoon, as his car reached the twelfth floor, he felt a jar and heard a shriek, and the deceased was subsequently found, dead, at the bottom of that shaft. There were no eyewitnesses to the accident, and the only evidence given, as tending in any way to show how it occurred, is

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
153 N.Y.S.—4

that of Oliver. The plaintiff had a verdict for $10,000, and from the judgment entered thereon, and an order. denying a motion for a new trial, defendants appeal.

The action was brought and tried upon the theory that the accident was due to the negligence of the defendants, in that they did not take reasonable precaution to protect the deceased in the work in which he was engaged. After a careful consideration of the evidence set out in the record, I am of the opinion that it does not etablish the defendant's negligence. The fact is uncontradicted that, on the morning of the accident, Mathias, defendant's foreman, asked Dunn, the superintendent of the general contractor, for the use of the two cars running to the eighteenth floor, in the work already described; that Dunn. replied, "Harry, you can't have them; * * * one shaft is dead, and the other shaft we are using for material;" that he then informed the deceased he was unable to secure the use of the cars, and that the work would have to be done in the usual way, which was in the manner before indicated. Oliver testified that the deceased was present and heard the conversation between Mathias and Dunn. Mathias put the deceased and one Smith at work stripping the putty from the glass on the eighteenth floor, and the deceased then knew that the car in one of the shafts was being operated. Mathias testified:

"I put two men to work, Mr. Smith and Mr. Fairweather, at the eighteenth floor to cut off the putty, and I put Fairweather [the deceased] in the dead shaft and Mr. Smith in the live shaft."

His testimony in this respect is corroborated by that of Smith, who stated:

"Mathias told me to take the live shaft. He thought I was a little more capable than Fairweather. At the same time he warned me not to work when the car was above the floor on which he was working."

Smith and the deceased accordingly started at the work assigned to them, and by half past 2 or 3 o'clock in the afternoon they had gotten down to the thirteenth floor; Smith, in the meantime, having worked exclusively on the live shaft and the deceased on the dead one. When they had finished the doors on the thirteenth floor, Smith left his work for a short time, and it was during his absence that the accident occurred. How the deceased came to go to the live shaft is not disclosed. He had been told to work on the dead shaft, and whether he was at work on the live shaft when the accident occurred is pure conjecture, and, if so, he knew the car was running in it, and that Smith had been told not to work when the car was above him.

[1, 2] The defendants, of course, were bound to take reasonable precautions for his protection. This they did. Had he continued to work where he was placed, he could not have been injured by a descending car, since no car was running in that shaft. I am unable to see how there was any legal duty imposed upon the defendant to protect him from injury when working somewhere else; but even if it be assumed there was such an obligation imposed upon them, and that he was at work in the live shaft, he was familiar with the situation, knew that the car in that shaft was being operated, and that instructions

had been given not to work there while the car was above. To hold the defendants liable under such circumstances is, in effect, to make an employer insure the safety of his employés. I am of the opinion that the verdict is not sustained by the evidence.

The judgment and order appealed from, therefore, should be reversed, and a new trial granted, with costs to appellants to abide event. All concur.